**HUNTINGDON COUNTY.**

</div>

JANUARY TERM, 1884, No. 114.                    MAY 29, 1884.

# Gregory's Appeal.

1. An assignee for the benefit of creditors stands in the position of his assignor, and the assignee has the same right to enforce the equities of the assignor, and require the application of the firm assets to the payment of the firm debts that the latter would have had if no assignment had been made.

2. A, one of two copartners, executed an assignment for the benefit of his creditors. Executions were subsequently issued against B, the remaining partner, by his individual creditors, and were restrained by the Court to his interest in the firm, which was sold by the sheriff. Upon a bill in equity filed before this sale by the assignees of A, the Court, after said sale, appointed a receiver, who took possession of the partnership property and assets, and realized a fund for distribution. *Held*, that the balance of the fund, after the payment of the execution creditors of the partnership, belonged to the general creditors of the partnership *pro rata* in preference to the purchaser of the interest of B.

Before MERCUR, C. J.; GORDON, PAXSON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ.

Appeal of Sarah L. Gregory from the decree of the Court of Common Pleas of *Huntingdon County* overruling exceptions to and confirming the report of an auditor appointed by the Court to distribute the balance in the hands of a receiver appointed to collect the assets, property, or effects belonging to the firm of B. Green & Co.

The following facts were found by the auditor, William Dorris:

For several years previous to January, 1882, Barton Green and Lewis L. Gregory, as partners, trading under the firm name of B. Green & Co., carried on a store for the sale of general merchandise in Huntingdon. On January 26, 1882, Barton Green and Sarah, his wife, made a voluntary deed of assignment to Thomas W. Myton and Logan Martin for the benefit of Green's creditors of "all the goods, chattels, and effects and property of every kind, real, personal, and mixed, of the said Barton Green."

On January 27, 1882, three executions were issued by Sarah Gregory against Lewis L. Gregory. To these the sheriff made the following return: "By virtue of this writ and other writs in my hand, after giving legal notice, I did, on the 3d of February, 1882, sell at public outcry the partnership interest of L. L. Gregory, in the firm of B. Green & Co., to Mrs. Sarah Gregory for the sum of $50, which sum I have in my hands."

After the assignment by Barton Green, executions were issued on judgments against B. Green & Co. by Hazlett Bros., the First National Bank of Huntingdon, Charles Green, Fisher & Sons, and J. R. Henderson. On February 2, 1882, the assignees of Barton Green presented their petition to the Court, setting forth "that if the sale of the property is allowed to proceed by virtue of said executions, your petitioners believe that the plaintiffs in said executions will claim and perhaps be entitled to have the proceeds of the sale of the partnership property applied, first, to the executions against the firm of B. Green & Co., and after they are satisfied, the surplus to the execution against Lewis L. Gregory in payment and satisfaction of his individual indebtedness, thus taking away from petitioners the interest in said property conveyed to them by said assignment, and taking away from the unsecured creditors of B. Green & Co. the property and funds primarily liable for the partnership debts, as also depriving the said Barton Green of a portion of the funds from which his individual creditors may be paid." The petition prayed that the execution of Sarah Gregory be stayed so far as the said partnership property of B. Green & Co. is

concerned, and as to the interest of Lewis L. Gregory therein. On the same day the Court made an order staying the executions against the firm of B. Green & Co., "the liens of the *fi. fas.* to remain, and to come in on a fund realized from the sale of property on which writs are liens. As to the writs against Lewis L. Gregory, individual member of said firm, the levy upon said writs, so far as the firm of B. Green & Co. is concerned, is restricted and limited to the interest of said Lewis L. Gregory in the firm of B. Green & Co., and, so far as its execution is confined to levy and sale of said interest in said firm, it is not interfered with, but the sheriff is at liberty to proceed with the execution of the same."

On the same day, February 2, a bill in equity was filed by T. W. Myton, Logan Martin, assignees of B. Green, and B. Green against Lewis L. Gregory, Sarah Gregory, *et al.* The bill set forth that Gregory had caused to be entered against him three judgments in favor of his wife, on which he had caused executions to be issued, and had directed the sheriff to levy upon the partnership property of B. Green & Co.; that he was wholly and entirely insolvent, without property of any kind; that he was largely indebted to said firm; that he had taken possession of the partnership books of accounts, and refused to permit their inspection; that he had collected money due to the firm, and was attempting to collect more, and that "great loss would follow in that the creditors of the firm of B. Green & Co. will not be paid their respective just demands in full."

The bill prayed for substantially the same relief as was asked for in the petition of the assignees presented the same day, and further prayed "that some proper person be appointed to receive and collect all money which may be coming to the said copartnership, make sale of the property of every kind thereof, and account for the same according to law." In accordance with the prayers of the bill and petition, the Court, on February 6, appointed M. M. McNeil receiver, to collect the debts due and outstanding, and other assets belonging to the partnership, and to sell goods and partnership effects.

The receiver sold the partnership goods and effects, collected notes, book accounts, and other choses in action, and filed his first account on January 8, 1883, showing a balance for distribution, after deducting expenses, of $2, 202 29.

On March 13, 1883, it was agreed between the counsel of Barton Green's assignees and the counsel of Sarah

and Lewis L. Gregory, that "the auditor shall distribute the fund, if the said assignees of Barton Green and Mrs. Sarah L. Gregory are entitled to the same after distribution to partnership executions, to the said assignees, and Mrs. Sarah L. Gregory, to be disposed of and distributed as their several interests, in pursuance of said partnership, and the assignment to T. W. Myton and Logan Martin, assignees of B. Green, and sale to Sarah Gregory of the interest of Lewis L. Gregory, may appear to be, upon final decree, in the bill in equity, No. 41, April term, 1882."

The auditor reported, *inter alia*, as follows:

"The claims presented to your auditor amount to $7,100, and the assets, in the hands of the receiver for distribution, amount to $2,202 29, showing that the firm of B. Green & Co., was insolvent on the 26 January, 1882, the date of the assignment by Barton Green. This assignment operated as a dissolution of the partnership, so far as the continuance of the business was concerned, but the connection still remained until the affairs would be wound up. The assignees are not strictly parties with Gregory, the survivor or solvent party, but still that community of interest remains that is necessary until the affairs are wound up, and that requires that what was partnership property before, shall continue for the purpose of a distribution, not as the rights of the creditors, but as the rights of the partners themselves require, and it is through the operation of administering the equities, as between the partners themselves, that the creditors have that opportunity: Williams, *ex. parte.*, 11 Ves., 4. What are these equities, and how are they to be administered? They are simply the right of the individual partners to require that the partnership assets shall be applied to the payment of the partnership debts, and not to the individual debts of the partners. Barton Green exercised that equity in handing over to his assignees all his interest in the partnership property, under the implied trust that they would convert it into money and apply it, *pro rata.* to the payment of the firm debts. The equities of the parties did not cease, and were not defeated by the assignment, but they continued until the partnership affairs have been wound up: 2 Lea. Cas. in Eq., 404 Story on part, sec 326. "This right is a privilege or lien on the funds, fully recognized by courts of equity."

To enforce this equity, Green joined with his assignees in the bill in equity, praying that his partner, Gregory, should be restrained and enjoined from selling the part-

nership effects.  The assignees are the debtor's instru-
ments for distribution, and stand in relation to the prop-
erty as stood the debtor himself.  The property is trans-
ferred to them as it would have been transferred to the
debtor's right hand : Vandyke *v.* Christ, 7 W. & S., 375.

By accepting the trust, the assignees became the trus-
tees of the creditors, (McLellan's Ap., 2 Cas., 463,) and
every act done to protect the interests of the creditors was
the act of the creditors themselves through their lawfully
constructed trustees.  The creditors were as effectually
represented in the bill in equity as though each indi-
vidual had been named a coplaintiff.  We have, then, one
of the two partners, (the assignor,) the assignees, and the
creditors acting in concert, vigilant in the assertion of
their rights, carrying out the provisions of the law, or, in
other words, working out the equities of the parties ; true,
in many cases it is said the creditors, as such, have no
control in enforcing their rights, that the equity to have
the partnership property applied to partnership debts was
to be worked out through the partners, but the creditors
might compel them to use their names for this purpose if
they were backward in protecting their rights : Backus
*v.* Murphy, 3 Wr., 402.  What was the position of the
other partner, Lewis L. Gregory, in his relation to the
partnership, the assignees, and the partnership creditors ?
He was in possession of the partnership property, with
full control over it, not as owner, but as trustee for the
creditors, not to carry on the business, but to wind it up
for the benefit of the creditors.  His possession was quali-
fied and clothed with a trust to apply the property in dis-
charge of the joint debts : Story on Part., 564 ; 601 Wil-
liams *ex parte*, 11 ves., 5.  The assignees of Green were
not in the situation of copartners with Gregory for the
purpose of carrying on the trade, but are considered as
copartners for the purpose of winding up the concern, and
the obligation to settle the partnership accounts is not
more imperative on the assignees than on Gregory : Coll
on Part., 486.  Their interests were identical, and both
parties were clothed with a trust from which neither could
be relieved until all the assets were distributed among
creditors of the partnership.  Lewis Gregory, being then
in possession, clothed with this trust, could have sold the
partnership property to pay the partnership debts, but it
does not follow that this right could be transferred to
another : Fraser *v.* Kershaw, 2 Kay & Johnson, 501.  The
possession of Gregory was but for one day.  On the 27th
January, 1882, three executions were placed in hands of

the sheriff in favor of Sarah Gregory, and on the 3d February the sheriff sold the interest of Lewis L. Gregory in the partnership to Mrs. Sarah Gregory, his wife, for $50. This sale, under executions against Gregory for his separate debt, conferred no greater interest than he had himself, to wit: his share of the assets after the payment of the partnership debts: Lead. Cas. in Eq., 408 ; Durborrow's Ap., 3 Nor., 404.   Your auditor is free to admit that there are authorities which are adverse to this view of the effect of the sheriff's sale of the interest of Lewis Gregory, but after examining all of them and giving the various questions the most careful consideration, he is convinced that this is the only construction which works out the equities of the parties and does substantial justice.   The leading case of Doner & Stauffer, 1 P. R., 198, followed by Kelly's Ap., 4 Har., 59 ; Baker's Ap., 9 Har., 77 ; Coover's Ap., 5 Cas., 9, and many others establishes clearly that the equities of the creditors are to be worked out through the equities of the partnership, and that sales on separate executions of the firm property which destroy the dominion of the parties over it, destroys the equity of the creditors whose liens have not actually attached, and the effect by private sales cannot be less.   If Barton Green had made an absolute sale of his interest in the partnership, or an assignment not for the benefit of his creditors, thereby parting with his interest in the firm and causing its dissolution, or if his interest had been sold on an execution by an individual creditor, and a similar sale had been made of the interest of Lewis L. Gregory, then these cases would apply, but under the facts here, as stated and discussed in this report, they have no application.''

The auditor, after allowing certain claims for fees, costs, expenses, and rents, which were not disputed, distributed the balance in his hands, amounting to $1,322 02, to the firm's execution creditors named above in full of all their claims, and to the firm's general creditors *pro rata.*

Sarah L. Gregory filed, *inter alia*, the following exceptions to the auditor's report :

*First.* The auditor erred in not distributing after other liens, if any, and costs of audit, the whole fund to the assignees of Barton Green, and Sarah Gregory, alienee of Lewis L. Gregory, as per agreement of counsel.

*Second.* The auditor erred in not deciding that the deed of assignment of 26th January, 1882, by Barton Green and wife to Thomas W. Myton and Logan Martin, his assignees, for the benefit of his own creditors, followed by

the sheriff's sale on the 3d of February, 1882, of all the partnership interest of Lewis L. Gregory in the firm of B. Green & Co., passed to the said assignees and alienee, the whole interest in the corpus of the partnership property of said firm, and that the said assignees and alienee were entitled to the fund in exclusion of general creditors without lien by judicial process upon it, and in not making his distribution of the fund accordingly.

*Third.* The auditor erred in making any distribution to general creditors of B. Green & Co., without execution or lien on the fund.

The Court dismissed these exceptions and confirmed the auditor's report.

Sarah L. Gregory thereupon took this appeal, assigning for error the dismissal of her exceptions.

*R. B. Petrikin* and *W. H. Woods* for appellant.

The assignment of Barton Green to his assignees, worked a dissolution of the partnership subject to the equity of the copartner to have the partnership property applied to partnership debts: Moddewell *v.* Keever, 8 W. & S., 63.

The assignees of Barton Green did not, by the assignment, become partners with Lewis L. Gregory in the partnership effects.   They were the trustees for the creditors of Barton Green: Baker's Appeal, 9 Harris, 82; Durborrow's Appeal, 3 Norris, 404; Seigel *v.* Chidsey, 4 Casey, 286.

By the sale of the interest of Lewis L. Gregory, and by the assignment of Barton Green, the corpus of the partnership property passes to the purchasers and assigns, and the partnership creditors cannot follow them: Doner *v.* Stauffer, 1 Pa., 198; Rex *v.* Lommon, 3 Phil., 287; Coover's Appeal, 5 Casey, 9.

*R. M. Speer* and *Jno. M. Bailey* for appellees.

Mrs. Gregory did not acquire the corpus of the partnership property at the sheriff's sale.   She only acquired "the partnership interest of Lewis L. Gregory in the firm of B. Green & Co."   The Court positively prohibited the sheriff from selling anything else.

The dissolution of the partnership did not prejudice the rights of the partners or their representatives to require that the partnership funds shall be directly and regularly applied to the discharge of the partnership liabilities: 2 Leading Cases in Equity, 404; Story on Partnership, 3 Ed., § 326; Black's Appeal, 8 Wr., 508; Van-

[Gregory's Appeal.]

dyke *v.* Christ, 7 W. & S., 375; Backus & Co. *v.* Murphy, 3 Wr., 397; Fraser *v.* Kershaw, 2 Kay & Johnson, 496.

June 9, 1884, the opinion of the Court was delivered by PAXSON, J.:

This contention arises from the distribution of the fund in the hands of the receiver of the firm of B. Green & Co., raised by him from the sale of the partnership property of said firm.

The auditor, after allowing certain claims for fees, costs, expenses, rent, &c., which are not disputed, distributed the balance in the hands of the receiver: First. To certain executions against the firm which had been stayed by order of court, the lien of which had been preserved by said order; and second, to the general creditors of the firm, *pro rata.* To this distribution the appellant excepted in the court below, and her exceptions having been dismissed there, has appealed to this court.

The firm consisted of Barton Green and Lewis L. Gregory. Green executed an assignment of his individual property for the payment of his individual creditors. The deed of assignment makes no mention of partnership property or partnership debts. The most that can be claimed for it, as respects the partnership, is that it passed his interest therein, subject to the debts of the firm. Certain executions were then issued against Lewis L. Gregory by his individual creditors. These executions were restrained by the court below to his right, title, and interest in the firm, and nothing more was sold thereunder. Afterwards, upon a bill in equity, filed by the assignees for creditors of Green, the Court appointed a receiver, who took possession of the partnership property and assets, the proceeds of which are now being distributed.

The appellant has no ground on which to claim the corpus of the partnership property or its proceeds. The purchaser, at a sheriff's sale, of the interest of a partner in the personal property of the firm, is not thereby entitled to take possession of any portion of the property. All he acquires is the right to an account, and he is not entitled to anything until the firm debts are paid: Durborrow's Appeal, 3 Norris, 404. The appellant bought the interest of Gregory for $50. What she paid would go to the execution under which the interest was sold; what she bought was the right to any proceeds of the partnership property after the firm debts were paid. Green, the other partner, has an equity which forbids the

application of his share of the firm property to the payment of his partner's individual debts. It is said, however, that Green may waive this equity. If we concede this, it does not help the appellant. There has been no such waiver. On the contrary, Green's assignees are in court, and have filed a bill to prevent such an application of the firm property. A voluntary assignee stands upon the footing of his assignor. The object and legal effect of the assignment, so far as it affects the partnership, was to pass the assignor's interest in the firm, after the payment of the firm debts, to his individual creditors. The assignee has the same right to enforce the equities of the assignor that the latter would have if no assignment had been made. The case does not require elaboration.

The decree is affirmed, and the appeal dismissed at the costs of the appellants.